IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| PALWINDER SINGH,<br>Petitioner,<br>vs.<br>Markwayne MULLIN, Secretary, Department of Homeland Security; Todd BLANCHE, Attorney General; David VENTURELLA, Acting Director of Immigration and Customs Enforcement (ICE); David EASTERWOOD, St. Paul ICE Field Office Director; Kevin SCHNEIDER, Polk County Sheriff,<br>Respondents. | **4:26-cv-00482-SHL-SBJ**<br><br>**ORDER GRANTING IN PART PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION.

Petitioner Palwinder Singh entered the United States without legal status in April 2023. After encountering immigration officials, he was placed into removal proceedings and released on his own recognizance. On October 26, 2026, Petitioner was arrested by immigration officials for driving infractions and taken into custody. Petitioner asserts that Respondents violated his due process rights by re-detaining him without any pre-deprivation process. The Court agrees. The Court therefore GRANTS IN PART the Petition for Writ of Habeas Corpus and ORDERS that Petitioner be given an individualized bond hearing before an Immigration Judge to determine whether he has violated the terms of his release in a manner that warrants revocation. The Immigration Judge must decide the issue of revocation or release on the merits and may not conclude that jurisdiction does not exist to release Petitioner.

## II. FINDINGS OF FACT.

The relevant facts are largely undisputed. Petitioner is a native and citizen of India who has been present in the United States since entering without inspection on or about April 17, 2023, in California. (ECF 1, ¶¶ 1–2; ECF 1-5, p. 1.) On April 20, 2023, Petitioner was served with a Notice to Appear that charged him with being inadmissible under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (ECF 1-5.) On that same date, and after three days in custody, Petitioner was released on his own recognizance. (ECF 1-6, p. 1; ECF 5, ¶ 4.) The Order of Release on Recognizance required Petitioner to obey all local, State and Federal laws and

ordinances and warned Petitioner that failure to comply with release conditions may result in revocation of his release and Petitioner's arrest. (ECF 1-6.) Petitioner filed an I-589, Application for Asylum and for Withholding of Removal, which is currently pending appeal following an adverse ruling from an immigration judge in April 2025. (ECF 1, ¶ 6; ECF 1-2; ECF 5-5.) Petitioner applied for and was granted work authorization, valid from December 20, 2023, to December 19, 2028. (ECF 1-4.)

On October 26, 2026, Petitioner was driving a semi-truck when he allegedly failed to stop at a weigh station on I-80 near Adel, Iowa. (ECF 5-1, ¶ 16.) The Iowa State Patrol conducted a vehicle stop and issued Petitioner a traffic citation. (ECF 5-1, ¶ 17.) An arrest warrant was issued for Petitioner, and he was taken into ICE custody. (ECF 5-1, ¶ 18; ECF 5-4.) Petitioner remains in custody at the Polk County Jail. (ECF 1, ¶ 10; ECF 5-1, ¶ 19.) Petitioner brings claims against Respondents for unlawful arrest and violations of due process. (ECF 1.) Petitioner seeks immediate release or a pre-deprivation bond hearing with the burden on the Government. (Id., p. 24.)

## III. HABEAS CORPUS STANDARDS.

Petitioner is entitled to writ of habeas corpus if, as relevant here, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Th[e] right [of habeas corpus] extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941); *see also Bradin v. U.S. Prob. & Pretrial Servs.*, No. 22-3032, 2022 WL 1154622, at *3 (D. Kan. Apr. 19, 2022) (collecting cases).

## IV. LEGAL ANALYSIS.

### *A. Exhaustion Does Not Bar Review.*

Respondents assert that an "immigration judge retains jurisdiction to hear any bond redetermination requests" while a removal order is pending before the BIA, and "Petitioner has not engaged in the legal system and followed the required process." (ECF 5, p. 4.) To the extent Respondents suggest that Petitioner was required to first exhaust administrative remedies before proceeding with his habeas petition, the Court rejects this argument. "[T]here is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his

immigration detention in federal court." *Souleimane C. v. Blanche*, No. 26-CV-2215 (LMP/JFD), 2026 WL 1180075, at *2 (D. Minn. Apr. 30, 2026) (quotation omitted). The Court concludes that exhaustion here would be futile based on *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (Sept. 5, 2025) and *Avila v. Bondi*, 170 F.4th 1128, 1132 (8th Cir. 2026), and the inability of an immigration judge to address the constitutional challenges presented in this Petition. *See e.g.*, *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 779 (E.D. Mich. 2025) (recognizing that the Sixth Circuit has "held that a due process challenge generally does not require exhaustion since the BIA lacks authority to review constitutional challenges"); *Cristian F.J.Z. v. Blanche*, No. CV 26-3469 (JRT/DTS), 2026 WL 2350319, at *1 (D. Minn. Aug. 13, 2026) (noting "an Immigration Judge does not have the authority to address Petitioner's Fourth Amendment claim"); *Matter of C-*, 20 I. & N. Dec. 529, 532 (BIA 1992) ("Moreover, it is settled that the immigration judge and this Board lack jurisdiction to rule upon the constitutionality of the Act and the regulations."). The Court will proceed to the merits of Petitioner's claim.

*B. Petitioner is Entitled to a Bond Hearing.*

In their Response, Respondents dispense with the usual statutory interpretation arguments relating to 8 U.S.C. §§ 1225 and 1226. Instead, they argue simply that an alien's discretionary release under § 1226(a) may be revoked at any time; that Petitioner was warned that the failure to obey state, local, and federal laws could result in revocation of his release; that Petitioner did, in fact, violate his conditions of release; and Respondents, accordingly, issued a warrant for his arrest. (ECF 5, ¶¶ 15–17.) Respondents do not acknowledge or engage with Petitioner's due process arguments. The Court concludes that Respondents have violated Petitioner's due process rights and that he is entitled to a bond hearing.

1. <u>*Demore* and *Avila* Do Not Foreclose Petitioner's Due Process Challenge</u>

Petitioner argues that his detention violates the Fifth Amendment's Due Process Clause because the government revoked his previously granted liberty without providing any pre-deprivation process. (ECF 1, pp. 4–21.) Petitioner acknowledges the Eighth Circuit's decision in *Avila*, which concluded that an alien who enters the country undetected but is later "arrested in the interior" (instead of at the border) is an "applicant for admission" for purposes of § 1225(b)(2) and subject to mandatory detention. 170 F.4th at 1138. He points to district courts in the Fifth and Eighth Circuits—the two circuits which of have adopted the relevant statutory interpretation—which have held that this "does not foreclose petitioners challenging their detention on due process

grounds." *Bonilla Chicas v. Warden*, 821 F. Supp. 3d 782, 791 (S.D. Tex. 2026) (collecting cases). This Court agrees. "While Petitioner's claim under the INA is controlled by [*Avila*'s] interpretation of the 8 U.S.C. § 1225(b)(2), his due process claim remains before the Court." *Id.*

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523 (quotation omitted). "At the same time, however, [the Supreme Court] has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* "[D]etainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

Here, Petitioner is not a criminal alien who has been convicted of serious crimes. Instead, he was issued a citation following a minor traffic infraction. (ECF 5-1, ¶¶ 16–17.) Petitioner's situation is thus distinguishable from those of the petitioners in *Denmore* and *Banyee v. Garland,* 115 F.4th 928 (8th Cir. 2024), where the petitioners were subject to criminal detention because they committed one of the criminal offenses identified in § 1226(c). In those situations, the petitioners received "the full procedural protections our criminal justice system offers" before being detained pursuant to § 1226(c). *Demore*, 538 U.S. at 513.

In this case, Petitioner has received no such procedural protection. Instead, Executive Branch officials simply changed their mind—and upended dozens of years of practice—by deciding that an alien in Petitioner's position has been subject to mandatory detention since the day he entered the United States. Like the majority of other courts across the country that have considered the issue, this Court concludes that a person has a viable due process claim when the Government abruptly changes the rules of the game in this manner. *See, e.g.*, *Bonilla Chicas*, 821 F. Supp. 3d at 795; *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1154 (D. Minn. 2025); *Barrera Leon v. Warden*, No. CV 4:26-1341, 2026 WL 905191, at *2 (S.D. Tex. Apr. 2, 2026) (collecting cases). "[A] person's liberty is equally protected, even when the liberty itself is a statutory creation of the State." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). The Court will proceed to the merits of Petitioner's as-applied challenge.

2. <u>The *Mathews* Factors Weigh in Favor of Petitioner's Due Process Claim.</u>

To determine whether Petitioner's civil detention violates due process, the Court balances

three factors set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976); they are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 685 (W.D. Tex. 2025) (quotation omitted).

As to the first factor, "[t]he interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). It therefore cannot seriously be disputed that Petitioner has a cognizable liberty interest in remaining out of custody. *See Lopez-Arvelo*, 801 F. Supp. 3d at 686; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (collecting cases). This is particularly true when, as here, Petitioner is being confined in "conditions indistinguishable from criminal incarceration." *Maldonado*, 795 F. Supp. 3d at 1148 (quoting *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025)).

Here, the fact that Petitioner was released by Respondents and allowed to remain on release for multiple years makes his liberty interest even stronger. "A noncitizen who has lived for years in the interior of the United States and established connections in the country acquires a protectible liberty interest." *Barrera Leon*, 2026 WL 905191, at *3. Indeed, the Supreme Court has recognized that "aliens who have established connections in this country have due process rights in deportation proceedings" that exceed those of aliens who are apprehended "at the threshold of initial entry." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020); *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (summarizing cases establishing that "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country"). In that regard, Petitioner is "experiencing all the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *Günaydin*, 784 F. Supp. 3d at 1187. Moreover, Petitioner acquired this liberty interest before the Government changed the statutory landscape by deciding that he was subject to mandatory detention under § 1225(b)(2) after previously having allowed him to live and work in the community. It would be one thing if he had just crossed the border; it is very different when he

spent three-plus years in the community under a different set of rules than the Respondents are now trying to apply. *See id.* at 1187; *Barrera Leon*, 2026 WL 905191, at *3; *Bonilla Chicas*, 821 F. Supp. 3d at 797. The first *Mathews* factor therefore weighs heavily in Petitioner's favor.

The second factor is "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Darvin M. v. Bondi*, 817 F. Supp. 3d 740, 750 (D. Minn. 2026) (quoting *Günaydin*, 784 F. Supp. 3d at 1187). Here, the risk of erroneous deprivation is severe because Respondents are proposing essentially *no procedure at all*. In their view, not only can they upend dozens of years of practice, but they can do so retroactively without giving Petitioner so much as an individualized hearing. This factor also weighs heavily in Petitioner's favor. *See id.*; *Bonilla Chicas*, 821 F. Supp. 3d at 798.

The third factor requires the Court to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Respondents do not directly address this factor. By citing their broad discretion to revoke release, Respondents, presumably, "rely on their general interest in enforcing the statute." *Barrera Leon*, 2026 WL 905191, at *5. But this "interest is insufficient to extinguish the petitioner's right to due process." *Id.* Although "ensuring that persons subject to removal do not commit crimes or evade law enforcement is a significant governmental interest," *Maldonado*, 795 F. Supp. 3d at 1153–54; *Günaydin*, 784 F. Supp. 3d at 1189–90, Respondents have proffered no evidence showing that this interest is substantially implicated here. Beyond simple traffic infractions, there is no evidence that Petitioner has violated the law since being released, nor are there any other material changes in his circumstances since Petitioner was released on his own recognizance in 2023. At most, filings in Petitioner's immigration case reflect that the immigration judge made adverse credibility findings based, in part, on a purported "misunderstanding regarding international travel." (ECF 5-6, p. 4.) However, these discrepancies seemingly relate to the period prior to his arrival in the United States. Since his arrival, it appears Petitioner has essentially no criminal record and has attended immigration court hearings, "factors that bear directly on flight risk and dangerousness." *Bonilla Chicas*, 821 F. Supp. 3d at 799. Moreover, these concerns, if any, can be assessed during an individualized hearing. *See Barrera Leon*, 2026 WL 905191, at *5. Thus, the third *Mathews* factor weighs in favor of Petitioner.

Because all three *Mathews* factors weigh in Petitioner's favor, the Court concludes that Respondents violated Petitioner's procedural due process rights when they abruptly changed the rules and arrested him despite the Government previously having allowed him to live and work in the United States. *See Bonilla Chicas*, 821 F. Supp. 3d at 799; *Barrera Leon*, 2026 WL 905191, at *5; *Lopez-Arvelo*, 801 F. Supp. 3d at 687 (collecting cases); *Muse v. Mullin*, No. 26-cv-4024, 2026 WL 1008532, at *4 (N.D. Iowa Apr. 14, 2026). Respondents are likewise violating his procedural due process rights by keeping him in custody without any sort of individualized custody redetermination hearing.

3. <u>The Appropriate Remedy Is an Individualized Bond Hearing.</u>

The only remaining question is the appropriate remedy. Petitioner requests immediate release from custody or, in the alternative, a "pre-deprivation bond hearing." (ECF 1, p. 24.) The Court has the authority to order a bond hearing or immediate release. *See Demore*, 538 U.S. at 517 (recognizing that § 1226(e) "contains no explicit provision barring habeas review"); *Lopez-Arvelo*, 801 F. Supp. 3d at 687–88 (collecting cases of both release and bond hearing as possible relief).

If there was no evidence that Petitioner had violated the terms of his release, the Court would order immediate release. The mere fact of arrest would have violated his due process rights. Here, however, the record shows that Petitioner issued a citation for failing to obey the traffic control device and driving past a weigh station without stopping. (ECF 5-1, ¶¶ 16–18.) In addition, Respondents suggests that Petitioner did not have a valid commercial driver's license. (ECF 5, ¶ 11, n.3.) Although unlikely, it is at least plausible that these facts, if proven, would shed light on Petitioner's dangerousness or risk of flight. Thus, the better exercise of discretion is to allow an Immigration Judge to decide in the first instance whether Petitioner has violated the conditions of his release in such a way that makes detention appropriate. The Immigration Judge must, however, decide the issue on the merits.

## V. CONCLUSION.

Based on the foregoing, IT IS ORDERED THAT:

1. Petitioner's Petition for Writ of Habeas Corpus (ECF 1) is GRANTED in part. By no later than December 7, 2026, Respondents must provide Petitioner with an individualized bond hearing, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner's detention.

The Immigration Judge must decide the issue of bond or detention on the merits and may not conclude that jurisdiction to order bond does not exist.

2. On or before December 9, 2026, one or both Parties must file a notice confirm that Petitioner has been granted the individualized bond hearing required by this Order. The notice also should state the outcome of the hearing.

**IT IS SO ORDERED.**

Dated: November 25, 2026

Stephen H. Locher
UNITED STATES DISTRICT JUDGE